**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Melvin Marin-Gaona,<br><br>        Defendant. | No. CR-25-05711-001-TUC-SHR (LCK)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant Marin-Goana's Motion to Dismiss Indictment. (Doc. 16.) The government responded to the motion (Doc. 21), and Defendant replied (Doc. 25). These matters came before the Court for oral argument and a report and recommendation as a result of a referral, pursuant to LRCrim 57.6. Oral argument was heard on March 27, 2026. (Doc. 26.) This motion was taken under advisement following argument. Subsequently, Defendant submitted a supplement to his motion. (Doc. 27.)

Defendant argues that the Indictment should be dismissed because it omits an implied element of the offense; the offense charged does not apply to Defendant's circumstances; and 18 U.S.C. § 955(g)(5)(A) is unconstitutionally vague. The government rejects each of these arguments and contends the motion should be denied. Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's motion based on vagueness.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Count One of the Indictment charges:

> On or about May 30, 2025, in the District of Arizona, defendant MELVIN MARIN-GAONA, knowing he was illegally and unlawfully in the United States, did knowingly possess a firearm in and affecting interstate commerce, to wit: one (1) Smith and Wesson, model M & P 40c, .40 caliber pistol.
>
> In violation of Title[] 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8).

(Doc. 9 at 1.) For purposes of this motion, the parties agree to the facts laid out below. (Doc. 16 at 2–4; Doc. 21 at 2.) Additionally, at oral argument, the parties agreed that Defendant does not possess, and never has possessed, legal status in the United States.

On May 28, 2019, Defendant (age 12) presented with his mother at the San Ysidro port of entry and requested asylum based on a fear of returning to Mexico. (Doc. 16-1 at 2–4.) Defendant was found subject to removal and given a Notice to Appear for a removal proceeding. (*Id.* at 4, 8–10.) Defendant was granted humanitarian parole on May 30, 2019, with an expiration date of April 2, 2020. (*Id.* at 6–7, 11.) Defendant and his mother submitted an application for asylum in May 2020 (*id.* at 13–38), which Defendant amended in October 2025 (*id.* at 39–43). He had an April 30, 2026, hearing scheduled in immigration court.[1] (*Id.* at 47.)

On October 20, 2021, Defendant's mother petitioned for a U visa for herself and for Defendant as a qualifying family member of a U visa recipient. (Doc. 16-1 at 49.) On December 4, 2024, the U.S. Citizenship and Immigration Service (USCIS) notified Defendant that his mother's Petition for U Nonimmigrant Status was bona fide. Because the cap on U-1 visas for the year had been reached, USCIS could not make a final determination of his mother's eligibility until a visa became available. (*Id.*) In the interim, as a qualifying family member, USCIS granted Defendant deferred action (*id.* at 49) and

---

[1] After oral argument, Defendant's counsel filed Supplemental Authority informing the Court that the April immigration court hearing would relate solely to Defendant's asylum application. (Doc. 27.) An online search revealed that his next hearing in immigration court is scheduled for October 2, 2026. *See* https://acis.eoir.justice.gov/en/.

issued him a 4-year employment authorization document (*id.* at 50–52).[2] Defendant turned 18 in January 2025.

On November 10, 2025, the Superior Court of Pima County sentenced Defendant to probation for the misdemeanor crime of discharging a firearm within the city limit on May 3, 2025, in violation of A.R.S. § 13-3107A. (Doc. 16-1 at 53–55.)  Defendant also was investigated for shooting at an individual, which he admitted but stated was a matter of self-defense; in June 2025, prosecution was declined based on insufficient evidence as to that event. (*Id.* at 57.)

## II. DISCUSSION

Defendant seeks dismissal of the Indictment under Federal Rule of Criminal Procedure 12(b), which permits a motion to resolve any pretrial issue "that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see United States v. Smith*, 740 F. Supp. 2d 1111, 1113–14 (D. Ariz. 2010) (finding pretrial motions are allowed if they can be resolved on undisputed facts). In particular, he contends the Indictment omitted an essential element of the offense and the conduct alleged is not prohibited by the statute, which he argues violates Rule 12(b)(3)(B)(v); and the criminal statute is vague as applied to him and, therefore, void and subject to dismissal under Rule 12(b)(1). The Court has determined it would be most expeditious to resolve this matter based on Defendant's third argument, vagueness.

Defendant argues that the statute, 18 U.S.C. § 922(g)(5)(A), is unconstitutionally vague as applied to an alien in his situation. "A criminal statute is void for vagueness if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). Defendant's vagueness challenge must be evaluated based on the specific facts of his case. *Id.* "Thus, Defendant's as-applied

---

[2] USCIS issued Defendant a second Approval Notice for employment authorization on March 20, 2025, which changed the class for his employment authorization from C14 to A20. Those two classifications are aliens with deferred action and family member of a U-1 nonimmigrant, respectively. The employment categories for I-765 Applications for Employment Authorization can be found at the following government website: https://www.uscis.gov/employment-authorization.

challenge . . . turns on whether the statute provided adequate notice to him that his particular conduct was proscribed." *Id.*; *see also United States v. Singh*, 979 F.3d 697, 726 (9th Cir. 2020) ("A statute is unconstitutionally vague if it 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'") (quoting *SEC v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031, 1048 (9th Cir. 2005) (en banc)).

Section 922(g)(5)(A) provides, in relevant part: "It shall be unlawful for any person . . . who, being an alien— . . . is illegally or unlawfully in the United States . . . to . . . possess in or affecting commerce, any firearm or ammunition." Defendant contends that, based on his specific circumstances, he would not have known that he was illegally or unlawfully in the United States because he entered the country with permission, pursued two different avenues towards legal status, and never was directed to depart. The Court must assess whether an alien—who sought asylum at a port of entry as a minor, was temporarily paroled into the country to apply for asylum, submitted an asylum application (which remains pending), and was granted deferred action and employment authorization based on a U visa petition that the USCIS determined was bona fide—should have understood that he was illegally or unlawfully in the United States for purposes of § 922(g)(5)(A). Defendant concedes that he did not possess lawful status in the country, but he argues that the criminal statute did not put him on notice that his absence of status placed him within its parameters.

The Ninth Circuit has recognized that the statute offers no definition of the phrase "illegally or unlawfully in the United States," and there is no legislative history on point. *United States v. Lopez-Perera*, 438 F.3d 932, 934 (9th Cir. 2006); *see United States v. Venegas-Vasquez*, 376 F. Supp. 3d 1094, 1105 (D. Or. 2019) (finding "illegally or unlawfully in the United States" to be "grievously ambiguous"). In determining whether the statute is vague as to Defendant, the central question is whether it refers to an alien's status or presence in the country. It is a critical distinction because an alien may be lawfully present in the United States without lawful status. *Chaudhry v. Holder*, 705 F.3d 289, 292

(7th Cir. 2013) (citing *In re L–K*, 23 I. & N. Dec. 677, 680–81 (BIA 2004)). If the statute unambiguously applies based on illegal status, then it applied to Defendant and prohibited him from possessing a gun. The government contends just that—the statute applies to all aliens without lawful <u>status</u>, and the legality of an alien's presence is irrelevant.[3]

The government argues that the statute unambiguously applied to Defendant because he knew he did not have lawful immigration status in the country. The government failed to explain how Defendant or someone in his circumstances should know the statute is about status and not presence. (*See* Doc. 21.) The government relied on a recent case in this Court, *United States v. Ali*, 2025 WL 1732852, at *6 (D. Ariz. June 23, 2025), in which § 922(g)(5)(A) was found not to be vague as applied to a particular alien's circumstances. In *Ali*, the defendant entered the country illegally and was arrested the following day. *Id.* at *1. At that time, he claimed a fear of returning to his country. *Id.* He was notified that he had been placed in removal proceedings, but he was released on an Order of Recognizance pending a hearing. *Id.* Subsequently, he filed an asylum application. *Id.* at *2. Several months later, he was arrested and charged with illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). *Id.* at *1–2. The District Court cited the following factors in concluding that a person in that defendant's circumstances should have been aware that he was in the United States illegally or unlawfully: he received a "Record of Deportable/Inadmissible Alien" and was placed in removal proceedings; a notice to appear stated that he was an alien that had not been admitted or paroled into the country; and his release notice informed him that he was required to submit for removal if ordered to do so. *Id.* at *6. The Court went on to note that a stay of prosecution while an asylum application is pending does not itself confer lawful presence on an alien. *Id.*

First, the Court did not closely examine or resolve in *Ali* whether illegally or unlawfully in the United States applied solely to an alien's status or if the legality of his presence was relevant. 2025 WL 1732852. Second, *Ali* is distinguishable as the

---

[3] The government contends that Defendant had neither lawful status nor lawful presence in the United States at the time he possessed a gun.

circumstances facing that defendant were not the same as those present here. In *Ali*, the Court indicated that the defendant had neither lawful status nor lawful presence; therefore, he necessarily was unlawfully in the United States and prohibited from possessing a firearm. In contrast to *Ali*, the government agrees that Defendant's initial presence in the United States was lawful because he temporarily was paroled in at a port of entry. Subsequently, the government granted him deferred action, based on his U visa application, another circumstance distinct from those in *Ali*. Additionally, Defendant arrived in this country as a minor. Based on these differences, the Court does not find *Ali* sufficient to resolve the present issue.

Looking beyond *Ali*, the Court examines how other courts have interpreted the phrase illegally or unlawfully in the United States. Several courts initially looked to the ordinary meaning of the words. Relying on dictionary definitions, the Fifth Circuit identified the ordinary meaning of the terms as an alien "whose presence within the United States is forbidden or not authorized by law," *United States v. Arrieta*, 862 F.3d 512, 515 (5th Cir. 2017) (quoting *United States v. Orellana*, 405 F.3d 360, 366 (5th Cir. 2005)), and the Sixth Circuit similarly defined the phrase as meaning "aliens who are 'in the United States' contrary to or without authorization by law," *United States v. Lopez*, 929 F.3d 783, 786 (6th Cir. 2019). The ordinary meaning of illegally and unlawfully in the United States, as defined by those courts, is no more helpful than the words themselves. Both courts ultimately went beyond the ordinary meaning to conclude that the statute's application was based solely on the lawfulness of an alien's status. *Arrieta*, 862 F.3d at 515 (finding lawfulness of presence not relevant despite the term "presence" being incorporated into the ordinary meaning found by the court); *Lopez*, 929 F.3d at 786 (finding that the statute was unambiguous and a grant of deferred action pursuant to DACA did not except the defendant from the statute). The Court discusses *Arietta* further on the next two pages. As for *Lopez*, the Court does not find it persuasive because its interpretation of the statute was based on an unexplained assumption. 929 F.3d at 786. Overall, the Court finds the typical meaning

of the statute's words would not put Defendant on notice that it applied to him solely because he lacked lawful immigration status.

Prior to 2014, many courts, including the Ninth Circuit, interpreted § 922(g)(5)(A) by deferring to an ATF regulation, which defined illegally or unlawfully in the United States as applying to aliens that did not possess valid immigrant status. *See United States v. Latu*, 479 F.3d 1153, 1158–59 (9th Cir. 2007) (citing 27 C.F.R. § 478.11). In 2014, the Supreme Court held that courts owe no deference to agency interpretations of criminal statutes. *Abramski v. United States*, 573 U.S. 169, 191 (2014) (examining 18 U.S.C. § 922(a)(6)). This decision abrogated the Ninth Circuit's holding in *Latu*, and the Ninth Circuit has not revisited the definition of illegally or unlawfully in the United States since then.[4] *See Venegas-Vasquez*, 376 F. Supp. 3d at 1102–03.

The government does not contend that this Court should defer to the ATF's regulation;[5] however, the cases upon which the government relied are not persuasive because they were based, directly or indirectly, on deference to that regulation. The government cited two cases that it found analogous to Defendant's circumstances because they involved aliens that lacked lawful status but had been granted deferred action under DACA, *United States v. Fierro-Morales*, No. 17-CR-3096-WQH, 2018 WL 3126116 (S.D. Cal. June 26, 2018), and *Arrieta*, 862 F.3d at 516. In *Arrieta*, the court held that an alien's

---

[4] In their response brief, the government quoted a different section of *Latu* not based directly on deference to the ATF regulation. (Doc. 21 at 5–6 (citing *Latu*, 479 F.3d at 1158).) The government relied upon the Ninth Circuit's rejection of Latu's argument that his circumstances were analogous to those in the earlier case of *United States v. Bravo-Mazquiz*, 412 F.3d 1052 (9th Cir. 2005). 479 F.3d at 1157, 1158. In *Bravo-Mazquiz*, the Ninth Circuit held that an alien was not unlawfully or illegally in the United States while his application for adjustment of status was pending because statutes in effect at that time precluded removal during the pendency of the application. 412 F.3d at 1055 & n.1. Because Latu's removal was not statutorily precluded, the court found *Bravo-Mazquiz* not relevant. 479 F.3d at 1158. Not mentioned by the government is that, in *Bravo-Mazquiz*, the Ninth Circuit implicitly determined that § 922(g)(5)(A) did not apply to the defendant although he did not have lawful status. Regardless, the analysis of both *Latu* and *Bravo-Mazquiz* incorporated improper deference to the ATF regulation. 479 F.3d at 1158-59; 412 F.3d at 1054. Further, Defendant is not arguing that his pending applications provided him lawful status, only that his presence was lawful.

[5] The government cited to some provisions of a government website as providing guidance on the meaning of deferred action. (Doc. 21 at 4.) Because those sections are specific to DACA recipients (*id.*), and Defendant is not within that category, the Court finds the website not relevant.

- 7 -

status was the determining factor as to whether he came within § 922(g)(5)(A). 862 F.3d at 515. The basis for that conclusion was a series of Fifth Circuit decisions beginning with *United States v. Flores*, 404 F.3d 320 (5th Cir. 2005). *Id.* at 515, 516. In *Flores*, the Fifth Circuit deferred to the ATF regulation defining illegally or unlawfully in the United States. 404 F.3d at 326. The Fifth Circuit has recognized that portion of *Flores* has been overturned. *United States v. Garcia*, 707 F. App'x 231, 234 (5th Cir. 2017) (citing *Abramski*, 573 U.S. at 191). The cases decided after *Flores* that were cited in *Arrieta*, *United States v. Lucio*, 428 F.3d 519, 520, 524–25 (5th Cir. 2005), and *United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006), each relied upon the holding of the prior case, *Flores* and *Lucio*, respectively. Because *Flores*, *Lucio*, and *Elrawy* all depend on improper deference to the ATF regulation, *Arrieta's* holding has been undermined. In *Fierro-Morales*, the court acknowledged that *Abramski* had rejected court deference to an agency's interpretation of a criminal statute; however, the court relied upon *Arrieta's* holding, which improperly deferred to the ATF's statutory construction. 2018 WL 3126116, at *4. Because *Arrieta* and *Fierro-Morales* were dependent on erroneous deference to the ATF's interpretation of § 922(g)(5)(A), the Court cannot rely upon them in interpreting the statute.

The government's reliance on *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1295–96 (10th Cir. 2008), suffers from the same problem. The Tenth Circuit stated that it was giving limited deference to the ATF regulation. *Id.* at 1298 n.4. However, the court relied on numerous cases that improperly deferred to the ATF regulation, which led it to implicitly adopt an interpretation of the statute focused solely on status. 521 F.3d at 1295–98 (citing *Flores*, 404 F.3d at 327; *Elrawy*, 448 F.3d at 314; *Lucio*, 428 F.3d at 520, 525, 526 n.8; *Latu*, 479 F.3d at 1159; *United States v. Atandi*, 376 F.3d 1186, 1187–90 (10th Cir. 2004)). Its statutory interpretation, however, was not explained and there was no direct analysis on the issue of status versus presence. For those reasons, that court's decision does not influence this Court's analysis.

After examining all the cases cited by both parties, the Court finds that § 922(g)(5)(A) did not give notice to a person in Defendant's circumstances that he was prohibited from possessing a firearm. Interpreting the statute based on the ordinary meaning of illegally or unlawfully sheds no light on whether Congress intended it to apply to an alien's immigration status or the legality of his presence in the country. *See Venegas-Vasquez*, 376 F. Supp.3d at 1098. To that point, many of the cases discussed presence and status interchangeably (even when interpreting the statute to refer to status), although they are distinct concepts within immigration law. *See, e.g., Latu*, 479 F.3d at1159; *Orellana*, 405 F.3d at 366-70.

The Court is not resolving the "best" meaning of the statute. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 408–09 (2024) (finding that courts are the proper entity to interpret a statute's best meaning). Instead, it decides only whether the statute is vague as applied to Defendant's circumstances.[6] Given that the Court cannot tell from the face of the statute whether it applies to status or presence, and current case law also fails to provide a clear answer, the Court finds an ordinary person in Defendant's circumstances would not have been on notice that § 922(g)(5)(A) was based solely on the lawfulness of an alien's status. *See Venegas-Vasquez*, 376 F. Supp. 3d at 1104 (finding § 922(g)(5)(A) is intelligible when illegally or unlawfully in the United States is interpreted to apply based on an alien's status or an alien's presence).

Defendant first came to the country at the age of 12, where he and his family presented themselves at a port of entry to seek asylum. They were granted temporary parole to enter the country, which all parties agreed gave them legal presence for a year.

---

[6] At oral argument, the government argued that interpreting subsection A of the statute to exclude Defendant would be illogical when the statue is examined wholistically. Subsection B of § 922(g)(5) criminalizes gun possession by aliens in the country on a nonimmigrant visa. Thus, gun possession will be forbidden by subsection B if Defendant is granted a U Visa. The government contends it would not make sense to interpret subsection A as allowing gun possession while Defendant is awaiting a visa, the granting of which would trigger subsection B to preclude gun possession. This argument does not impact the Court's overall analysis. The Court is not attempting to set forth the best interpretation of an ambiguous statute. Rather, the current analysis is focused on whether the statutory provision on which the Indictment is based (subsection A) is vague as applied to Defendant. Additionally, Defendant has an application pending for asylum and, if granted, he would not be prohibited from gun possession by § 922(g)(5)(A) or (B).

Subsequently, his mother filed an application for asylum on his behalf, which is still pending. Additionally, she applied for a U Visa for him. The government determined that the application was bona fide pending a full review when a U Visa becomes available. *See United States v. Valdivias-Soto*, 112 F.4th 713, 720 (9th Cir. 2024) (explaining that a U visa is available to a victim of abuse that may assist law enforcement in prosecuting the perpetrator). Based on that finding, just before Defendant turned 18, the government granted him deferred action and employment authorization for 4 years. In other words, Defendant lawfully entered the country as a minor and, since that time, the government has signaled its acceptance of his presence. He has followed all the rules to obtain lawful status. At the time Defendant became an adult, he had been informed that he was authorized to work legally and remain in the country.

Further, the governing regulations indicate he was lawfully present for purposes of Social Security and Medicare. 8 C.F.R. § 1.3(a)(4)(vi); 42 C.F.R. § 417.422(h); see *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S 1, 18–19 (2020) (finding deferred action pursuant to DACA is a form of affirmative relief granting access to employment authorization, Social Security, and Medicare); *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 975 (9th Cir. 2017) ("Persons with 'approved deferred action status' are expressly identified as being *present* in the United States during a 'period of authorized stay,' for the purpose of issuing state identification cards."). And, for purposes of admissibility, Defendant accrued no unlawful presence while he was a minor, and his asylum application and deferred action (granted prior to him turning 18) meant he had not accrued any period of unlawful presence at the time he possessed the weapon. 8 U.S.C. § 1182(a)(9)(B)(ii) & (iii); *cf. Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1059 (9th Cir. 2014) (citing 8 U.S.C. § 1182(a)(9)(B)(ii) and noting that "DHS considers DACA recipients not to be unlawfully present in the United States because their deferred action is a period of stay authorized by the Attorney General."); *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2015) ("a formal Department of Homeland Security ("DHS") policy memorandum states that it is DHS's policy to stay the proceedings and

removal of an alien who is facially eligible for a U-visa, even after he or she has been issued a final order of removal."). At a minimum, the statute does not unambiguously apply to Defendant's circumstances. Because the Court finds 18 U.S.C. § 922(g)(5)(A) is vague as applied to Defendant, the Indictment based on that statute should be dismissed.

### III. CONCLUSION AND RECOMMENDATION

The Court has determined that 18 U.S.C. § 955(g)(5)(A) is vague as applied to Defendant. Therefore, the Indictment should be dismissed. It is recommended that, after its independent review of the record, the District Court grant Defendant's Motion to Dismiss (Doc. 16). Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 29th day of May, 2026.

Honorable Lynnette C. Kimmins
United States Magistrate Judge

- 11 -